Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7673 | **DATE** | 4/19/2001 |
| **CASE TITLE** | Percy Allen, et al. vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 5/10/01 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Order. Motion by plaintiffs for class certification [40] is granted. A status hearing is ordered for Thursday, May 10th at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 4/23/01 date docketed | 43 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 APR 20 PM 3: 37 | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 2 3 2001

| | | |
|---|---|---|
| PERCY ALLEN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 98 C 7673 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## ORDER

A group of minority police officers have filed suit against the City of Chicago ("City") alleging that the City employed discriminatory screening practices, in violation of Title VII of the Civil Rights Act of 1964, for the promotion of officers to the rank of sergeant in August, 1998. In this motion, plaintiffs seek class certification. The court grants plaintiffs' motion for class certification but modifies the plaintiffs' definition of the plaintiff class to exclude former officers and officers who have received promotion to the rank of sergeant since August, 1998.

### Background

The plaintiffs are African-American and Hispanic officers who were denied promotion to the rank of sergeant in August, 1998. They complain of two discriminatory practices used by the City to screen for promotions. One was a written exam that served as the first round of the screening process. Those who did not pass the written exam were not considered for promotion during the second and final round of the process. Plaintiffs allege that this exam had a disparate impact on minorities, allowing disproportionately fewer minorities than whites to reach the second round of the process. The other practice at issue was the use of another test, called an "assessment center," as the primary basis for second-round screening. (Pl. Mot. for Class Cert. at

¶8.) Seventy percent (70%) of promotions during the second round were based on a rank-ordering of scores achieved on the assessment centers. Thirty percent (30%) of promotions were decided based on "merit" meaning that non-test based criteria were the basis for promotion. (Id. at ¶9.) Plaintiffs complain that use of the assessment centers also had a disparate impact on minorities. Plaintiffs contend that merit-based selection, which plaintiffs claim does not have a disparate impact on minorities, should have been the sole method used for promoting officers to the rank of sergeant.

In this motion, plaintiffs wish to certify their suit as a class action under the following definition:

> All present and former African-American and Hispanic Chicago police officers who
> (a) applied in 1998 for promotion to sergeant,
> (b) met the time-in-grade requirements for promotion,
> (c) took the written test component of the promotional process,
> (d) where [sic] not promoted to sergeant on August 9, 1998,
> and
> Subclass A: Were not considered for a merit promotion to sergeant because they did not pass the written test, and
> Subclass B: Passed the written test and were not among those selected to be promoted on the basis of merit on August 9, 1998.

(Pl. Mot. for Class Cert. at 1). Plaintiffs wish to certify this class under Federal Rule of Civil Procedure 23(b)(2) for the purposes of obtaining injunctive relief.

## Analysis

The City does not argue that the court should deny class certification. Indeed, the City "agrees that this case ought to have a class certified with two subclasses." (Def. Resp. to Pl. Mot. for Class Cert. at 1.) Rather, the City wishes to modify the plaintiffs' class description in two ways. One is to exclude all former officers from the suit. The other is to exclude officers who

2

have been promoted since August 9, 1998. The plaintiffs have not replied to the City's proposed alterations to the class definition.

The court grants plaintiffs' motion for class certification but modifies the plaintiffs' description of the plaintiff class to exclude officers who have left the force and officers who have been promoted since 1998. Modification of the class description should be discussed in the context of Federal Rule of Civil Procedure 23, which establishes the prerequisites for class certification. A class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Once the prerequisites are met, a party may maintain a class action for injunctive relief under Rule 23(b)(2) so long as "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

*Rule 23 Prerequisites*

The numerosity requirement of Rule 23(a)(1) is easily met for both subclasses. Subclass A consists of 361 officers, while Subclass B consists of 1,012 officers. The test for numerosity is whether it is general knowledge or common sense that the proposed class would be so large that joinder would be impracticable. *See Rivera v. Grossinger Autoplex, Inc.*, 2000 WL 1280904, at *3 (N.D.Ill. Sep. 1, 2000). It is common sense that joinder of 361 or 1,012 litigants would be impracticable. The City does not dispute this.

3

Similarly, the commonality requirement of Rule 23(a)(2) is met in both subclasses. The requirement of commonality is satisfied where there is a question of law or fact common to the resolution of the class members' claims. *See Rivera*, 2000 WL 1280904, at *3. Where the party opposing the class has engaged in some standardized conduct directed at the class members, this requirement is usually met. *See Keele v.. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). In this case, plaintiffs contend that the City's use of a written exam was standardized conduct directed at members of Subclass A, and its use of assessment centers, another type of test, was standardized conduct directed at Subclass B. These claims are sufficient to show commonality within the subclasses. The City does not dispute that the commonality requirement is met.

Typicality, a requirement of Rule 23(a)(3), is also satisfied for both subclasses. The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (internal quotation marks and citation omitted). The claims of the named plaintiffs for each of the subclasses arise from the same course of conduct giving rise to the claims for the other subclass members. In the case of Subclass A, the initial written test given to all officers aspiring to be sergeants is the source of claims for the named plaintiffs and the other members of the subclass. In the instance of Subclass B, the use of rank scores on the assessment centers, instead of non-test based criteria, is the source of claims for the named plaintiffs and the other members of this subclass. The City does not dispute that the claims of the named plaintiffs are typical of the claims of the members of the subclasses.

The final prerequisite under Rule 23(a) is that the representatives will fairly and

4

adequately represent the interests of the class. This requirement of Rule 23(a)(4) is comprised of two separate inquiries: (1) Are the plaintiffs' attorneys qualified, experienced, and able to conduct the proposed litigation?, (2) Do the plaintiffs have interests antagonistic to those of the purported class members? *See generally Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). The court sees no reason to question the competence or capacity of the plaintiffs' attorneys to represent their clients. The court, however, does see potential problems arising from diverging interests between the named plaintiffs and some members of the subclasses as defined by the plaintiffs.

The plaintiffs' class description includes current and former officers as well as officers who have been promoted since August, 1998. The City contends that the subclasses should exclude former officers and officers who have received promotions after August, 1998. Plaintiffs have not replied to the City's arguments regarding either issue.

The City cites Judge Zagel's opinion in *Banos v. City of Chicago*, 98 CV 7629 for the proposition that former officers should be excluded from the class. *Banos* involved a class action filed against the City of Chicago by African-American and Hispanic police sergeants who were denied promotion to lieutenant.[1] In deciding the plaintiffs' motion to certify a Rule 23(b)(2) class, Judge Zagel excluded former officers from the subclasses because

> the remedy for such individuals (if liability exists) is likely to be substantially different [from the remedy for officers currently on the force], . . . [and] the intricacy in devising remedies for them would, in my judgment, diminish the chances of prompt settlement. In a sense, the [officers] who have left would have interests at some odds with those who have stayed.

---

[1] In *Banos*, the plaintiffs and the City retained the same attorneys representing plaintiffs and the City in this case.

5

*Banos*, 98 CV 7629, (N.D.Ill January 17, 2001). Judge Zagel explained that it would be much more difficult to determine the career value of and the remedy for a loss of a promotion for an officer who had left the force than for one who stayed given that officers leave for a variety of reasons, many of which are unconnected to their denial of promotion: "There are those who have retired, those who left for greater economic opportunities, those who left before they were fired, those who left because of family obligations and so forth." *Id.* Judge Zagel noted that those who are excluded from the class would not be precluded from bringing separate lawsuits and that should the instant class action produce a favorable verdict for the plaintiffs, this outcome would be favorable precedent for a future lawsuit against the City. *See id.*

The court agrees with Judge Zagel's analysis and excludes former officers from the definition of the plaintiff subclasses in this case. The cases are extremely similar, and Judge Zagel's reasoning for the exclusion of former officers is sensible. Therefore, the subclasses will consist only of current members of the police force.

Next is the question of whether to exclude the 97 African-American and Hispanic officers who have been promoted to sergeant since August 9, 1998. Plaintiffs would include these officers in Subclass B because they had passed the initial written test for sergeant but were not promoted to sergeant on August 9, 1998. The City argues that these officers should not be included because they possess interests "at odds with the interests of the class to the extent the class argues that the City's promotion processes, by which these 97 sergeants were promoted, violate Title VII." (Def. Resp. to Mot. for Class Cert. at 2.) Plaintiffs offer no reply to the City's arguments here.

The court agrees with the City that it is possible that the interests of the named plaintiffs

6

are antagonistic to those of the minority officers who have already been promoted to sergeant. The named plaintiffs, not having been promoted, may seek only injunctive or declaratory relief [2] that may be of little or no help to those officers who have already reached the sergeant position. Furthermore, as the City notes, the named plaintiffs will seek to show that the current promotion system violates Title VII. Therefore, they will, in effect, assert that the system by which these 97 officers received promotions is seriously flawed. It is unclear whether these 97 officers would agree with that assessment. Though excluded from this class action, these officers would not be precluded from bringing separate suits in which they may seek, for instance, compensatory damages for the time during which they were not promoted to the rank of sergeant. In addition, should the plaintiffs in Subclass B prevail, their victory would serve as precedent for any subsequent suits brought by any of the 97 officers.

Finally, the plaintiffs seek to employ a Rule 23(b)(2) class action for each subclass. A Rule 23(b)(2) action may be used so long as "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The City does not dispute that it acted on grounds generally applicable to the class. All applicants to the rank of sergeant had to take a written test and an assessment center exercise. The plaintiffs were all subject to the same treatment by the City. Therefore, a Rule 23(b)(2) class action is appropriate in this case.

---

[2] Indeed, the officers can seek only injunctive or declaratory relief as a Rule 23(b)(2) class.

7

## Conclusion

The court grants plaintiffs' motion for class certification. Specifically, it certifies the following classes: all present African-American and Hispanic Chicago police officers who

(a) applied in 1998 for promotion to sergeant,

(b) met the time-in-grade requirements for promotion to sergeant,

(c) took the written test component of the promotional process,

(d) have not been promoted to sergeant, and

Subclass A- Were not considered for a merit promotion to sergeant because they did not pass the written test, and

Subclass B- Passed the written test and took the assessment exercise, but have not been promoted to sergeant.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 19, 2001